UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
c/o U.S. Attorney's Office
601 D Street, NW
Washington, DC 20530

        Plaintiff,

   v.

$682,920 OF FUNDS HELD IN THE NAME
OF FINROST LIMITED,

        Defendant.

Civil Action No. 23-3560

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

Plaintiff the United States of America brings this verified complaint for forfeiture *in rem* against the defendant property, namely: $682,920[1] of funds in the name of Finrost Limited ("Finrost") sent by Customer 1 held at U.S. Bank 1 ("Defendant Funds") and alleges as follows.

## NATURE OF ACTION AND THE DEFENDANT IN REM

1.     This in rem forfeiture action arises out of an investigation by Homeland Security Investigations ("HSI") of the use of United States correspondent accounts to transfer funds through a network that circumvented U.S. sanctions. After being designated by the Department of the Treasury's Office of Foreign Assets Control ("OFAC"), three arms-trading companies, Partizan Tech DOO ("Partizan Tech"), Tehnoglobal Systems DOO Beograd ("Tehnoglobal"), and Grawit

---

[1]    The Defendant Funds—i.e., $682,920 in the name of Finrost held at U.S. Bank 1—are comprised of two payments made over a three-month period. Specifically, those payments were (1) $286,970 sent on November 30, 2018, and (2) $395,950 sent on February 5, 2019. Both payments have the same originator and beneficiary and passed through the same U.S. correspondent bank.

Limited (collectively, the "Designated Entities"), used a series of front companies, including Falcon Strategic Solutions ("Falcon"), Finrost, and Vectura Trans ("Vectura"), to continue conducting correspondent banking transactions through the U.S. financial system, in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705 *et seq.*, the federal money laundering statute, 18 U.S.C. § 1956, and the conspiracy statute, 18 U.S.C. § 371.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over an action commenced by the United States pursuant to 28 U.S.C. § 1345, over an action for forfeiture pursuant to 28 U.S.C. § 1355, and over this particular action pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

3.     This Court has in rem jurisdiction over the Defendant Funds pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and (b)(2) and 28 U.S.C. §1395(c).  The Defendant Funds are currently frozen in bank accounts located in the United States.  Upon filing of this complaint, the plaintiff requests that the Court issue an arrest warrant in rem pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the Defendant Funds pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(C).  Further, individuals and entities named herein are Specially Designated Nationals ("SDNs"), who failed to seek the requisite licenses from OFAC, located in Washington, D.C.  *See* 18 U.S.C. § 3237.

## STATUTORY FRAMEWORK

### I.    International Emergency Economic Powers Act ("IEEPA")

4.     This civil forfeiture action relates to violations of the regulations and Executive Orders issued pursuant to IEEPA.  IEEPA grants the President authority, as outlined in 50 U.S.C. § 1702, to deal with threats to the national security, foreign policy, or economy of the United States that originate in whole or in substantial part outside the United States.  IEEPA authorizes the

President to declare a national emergency with respect to such a threat, and IEEPA prescribes penalties for violations thereunder.  *See* 50 U.S.C. § 1705(a).

5.      On December 20, 2017, the President issued Executive Order 13,818, which declared a national emergency with respect to serious human rights abuse and corruption around the world, and pursuant to his authority under IEEPA, took steps to address those threats to the national security, foreign policy, and economy of the United States.  Specifically, the Order provides that all property and interests in property, of those individuals and entities designated by Executive Order 13,818, which are in the United States, come into the United States, or come within the possession of a United States person, are blocked and may not be transferred, paid, exported, withdrawn or otherwise dealt in by any persons designated by Executive Order 13,818. Exec. Order. No. 13,818, 82 Fed. Reg. 60,839-60,843 (Dec. 21, 2017).

6.      Pursuant to IEEPA, any transaction conducted within the United States which evades or avoids, or has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in Executive Order 13,818, is prohibited.  *See generally* 50 U.S.C. § 1705(a).

**II.     Money Laundering**

7.      Under 18 U.S.C. § 1956(a)(2)(A), it is a violation to transport, transmit, or transfer, or to attempt to transport, transmit, or transfer a monetary instrument or funds to, among others, a place in the United States from or through a place outside the United States with the intent to promote the carrying on of a specified unlawful activity.

8.      Pursuant to 18 U.S.C. § 1956(c)(7)(D), the term "specified unlawful activity," includes violations of the penalty provisions of IEEPA.

9.      Further, pursuant to 18 U.S.C. § 1956(h), it is unlawful to conspire to violate Section 1956.

III.    **The Civil Forfeiture Statute**

10.     Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in or facilitating a transaction or attempted transaction in violation of 18 U.S.C. § 1956, or any property traceable to such property is subject to forfeiture.  Forfeiture pursuant to this statute applies to more than just the proceeds of a specific crime.  Forfeiture sought in connection with a violation of the money laundering statute applies to all property "involved in" or "facilitating" the crime, which can include all funds commingled with money derived from illicit sources.

11.     Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of the money laundering statute, IEEPA, or a conspiracy to violate money laundering or IEEPA, is subject to forfeiture.

## FACTS GIVING RISE TO FORFEITURE

I.      **Relevant Individuals, Entities, and Background**

12.     Partizan Tech, Tehnoglobal, and Grawit Limited are arms trading companies owned or controlled by an individual who was placed on the Office of Foreign Assets Control's ("OFAC") Specially Designated Entities ("SDN") list by Executive Order 13,818.  For this reason, OFAC designated these companies pursuant to that Executive Order on December 21, 2017. 82 Fed. Reg. 61,666 (Dec. 28, 2017).  Pursuant to this designation, U.S. persons were restricted from engaging with the Designated Entities in any U.S.-dollar transactions that occurred in whole or in part in the United States, and from exporting or supplying any good, technology, or services from the United States to those companies. *See* Notice of OFAC Sanctions Actions, 82 Fed. Reg. 61,665 (Dec. 28, 2017).

13.     Following the 2017 designations, U.S. banks began to block wire transfers associated with Partizan Tech, Tehnoglobal, and Grawit Limited.  Attempting to circumvent these

sanctions, several front companies, including Finrost, Falcon, and Vectura were established to continue conducting correspondent banking transactions through the U.S. financial system.

14.     Finrost was created in 2016 but remained largely dormant until it began transacting through the United States on behalf of the Designated Entities in or about January 2018.  Finrost is organized or located in Cyprus.  In bank transactions, Finrost provided the same addresses as both Partizan Tech and Grawit Limited.

15.     Falcon was established on or about December 29, 2017, and was used to receive payments on behalf of Partizan Tech and Tehnoglobal after they were designated by OFAC. Falcon is organized or located in Serbia.

16.     Esad Kapidzic ("Kapidzic") was a director for both Finrost and Falcon.  Global Magnitsky Human Rights Accountability Act Annual Report, 84 Fed. Reg. 72,424, 72,427 (Dec. 31, 2019).

17.     Vectura provided services to Partizan Tech and other sanctioned individuals or entities after their designation in 2017.  Vectura is organized or located in Serbia.

18.     On December 9, 2019, Falcon, Finrost, and Vectura, were themselves designated by OFAC pursuant to Executive Order 13,818 for their activities supporting designated persons or entities.  *See* Notice of OFAC Sanctions Actions, 84 Fed. Reg. 68,014, 68,015 (Dec. 12, 2019).

19.     As further described below, the Defendant Funds are sums associated with wire transfers to Finrost as it materially supported or acted on behalf of the Designated Entities in furtherance of their business activities.

## II.     Finrost as a Financial Intermediary for Transactions with Customer 1

20.     In 2018, the Designated Entities began relying on Finrost to receive U.S. dollar payments on their behalf, including from Customer 1.

- 5 -

21.     Customer 1 was a client of Grawit Limited and Tehnoglobal before their 2017 OFAC designation.  Bank records show that between November 2016 and December 2017, Customer 1 wired three payments in U.S. dollars to these companies, with the final payment to Grawit Limited wired just three days before the 2017 designation.

22.     Immediately after the 2017 designation, in January 2018, Customer 1 began wiring the payments to Finrost.  Throughout 2018, Customer 1 sent over a dozen payments to Finrost using U.S. correspondent banks.

23.     The interactions between Customer 1 and Finrost reveal that Finrost, Falcon, and Partizan Tech were all effectively the same company and that Customer 1 understood this to be the case.  For example, on April 10, 2018, Finrost sent a Pro Forma Invoice, on Finrost letterhead, to Customer 1's CEO providing for a payment to Finrost on a contract in the amount of $210,000.00.  Kapidzic, the director of both Finrost and Falcon, signed on behalf of Finrost.  Soon after, on April 12, 2018, Finrost attached an updated invoice in the same amount that was signed by Kapidzic, but requested payment to Falcon, not Finrost.  In that same communication, Finrost wrote, "Please be informed that we are change transport agreement and PF Invoice on our other company named FALCON STRATEGIC SOLUTIONS."

24.     For Customer 1, the Designated Entities and their front companies were apparently interchangeable.  For example, on August 16, 2018, Kapidzic, using a Finrost email account and letterhead, reached out to Customer 1's CEO again with a greeting for the holiday Eid Mubarak.  Later that day, the CEO responded to the Finrost email, but stated, "Happy Eid to you, your family and all my friends at Partizan."  To Customer 1, Finrost, Falcon, and Partizan Tech were seemingly all the same entity.  The CEO communicated with the same person, Kapidzic, whether the CEO

was sending wires to Finrost, Falcon, or Partizan Tech.  The only difference was the name of the company.

25.    The Designated Entities' attempts to transact with Customer 1 continued through the remainder of 2018 into 2019.  On February 14, 2019, Partizan Tech—after its 2017 designation—sent Customer 1's CEO multiple Export of Arms and Military Equipment forms that were signed in February and June 2018.  Although sent by Partizan Tech, these forms listed Finrost—not Partizan Tech—as the buyer and Customer 1, as the Intermediary/consignee.  These forms also identified Vectura as the exporter, and Customer 1 as the end user.

26.    U.S. dollar payments sent to Finrost constituted a violation of sanctions against Partizan Tech by the U.S. banks that were involved.  Between September and November 2018, three separate wire transactions from Customer 1 to Finrost, totaling $3,886,973.41, were blocked as they passed through U.S. correspondent bank accounts.  These funds were subsequently seized by the Government on or around April 2022 in connection with another civil forfeiture suit, *United States v. $9,781,900.00 of Funds in the Name of Falcon Strategic Solutions*, Civ. A. No. 22-0898 (RDM) (D.D.C.).

27.    The Defendant Funds here are similarly traceable to payments made by Customer 1 to Finrost.  Specifically, the Defendant Funds consist of two payments totaling $682,920 sent by Customer 1 to Finrost between November 2018 and February 2019.  The first wire transaction was for $286,970 and occurred on or about November 30, 2018.  The second wire transaction was for $395,950 and occurred on or about February 5, 2019.  Both payments were blocked as they passed through a U.S. correspondent account and remain frozen at U.S. Bank 1.

28.    The Designated Entities' efforts to use Finrost as a conduit for business with Customer 1 support violations of IEEPA and money laundering statutes.  As such, any payments

to Finrost as part of these laundering efforts, including the Defendant Funds, are subject to forfeiture.

### COUNT ONE – FORFEITURE
### (18 U.S.C. § 981(A)(1)(A)

29. The United States incorporates by reference the allegations set forth in paragraphs above as if fully set forth herein.

30. Finrost, and others, known and unknown, acted individually and conspired to transport, transmit, or transfer Defendant Funds, to wit $682,920 in U.S currency, to place inside the United States from or through a place outside the United States, with the intent to promote the carrying on of violations of IEEPA, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(A).

31. As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transaction in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(2)(A), or as any property traceable to such property.

### COUNT TWO – FORFEITURE
### (18 U.S.C. § 981(A)(1)(C))

32. The United States incorporates by reference the allegations set forth in paragraphs above as if fully set forth herein.

33. Finrost, and others, known and unknown, acted individually and conspired to conduct transactions involving the sale of goods in U.S. dollars, specifically, the attempted transmission of Defendant Funds for the purposes of payment to sanctioned entities, in violation of IEEPA, 50 U.S.C. § 1705; and the conspiracy statute, 18 U.S.C. § 371.

34. As such, the Defendant Funds are subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C), as property, real or personal, which constitutes or is derived from proceeds traceable to a conspiracy to violate 50 U.S.C. § 1705.

## PRAYER FOR RELIEF

WHEREFORE, the United States of America prays that notice issue to the defendant property as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: November 29, 2023
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney


By: _____ */s/ Brian P. Hudak* _____
     BRIAN P. HUDAK
     Chief, Civil Division
     601 D Street, NW
     Washington, DC 20530
     (202) 252-2549

CHRISTOPHER TORTORICE,
Assistant United States Attorney

*Attorneys for the United States of America*

**<u>VERIFICATION</u>**

I, Rory Marquette, a Special Agent with Homeland Security Investigations, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture In Rem is based upon reports and information known to me and/or furnished to me by other law enforcement representatives and that everything represented herein is true and correct.

Executed on this 28th day of November, 2023

_____
Rory Marquette Special Agent
Homeland Security Investigations